THE PEOPLE, plaintiffs in error, *v.* LEWIS DIBBLE, defendant in error.

On the trial of an indictment for passing a counterfeit bank note, it is not competent for the prosecution to prove that, two or three days after the transaction in question, the prisoner passed two other counterfeit bank notes to other persons — the said notes not purporting to have been issued by the same bank as the one for passing which this indictment was found, and the uttering of them being in no way connected with that act.

IN this case the prisoner was tried and convicted, before the Otsego County Sessions, of forgery in the second degree, for passing to one Newman a counterfeit bank bill, on " the Westfield Bank." On writ of error to the Supreme Court, the judgment was reversed and a new trial ordered. The case in the Supreme Court is reported in 4 *Park. Cr. R.*, 199.

The cause was removed to this court, by writ of error sued out in behalf of the People.

It was proved on the trial, that the prisoner passed the counterfeit five dollar note described in the indictment to Samuel S. Newman, on the 29th of November, 1858, in payment for cutting a pair of pantaloons, and received from Newman $4.81 in change.

The court then permitted the prosecution to prove, by Smith Kenyon, against the objection of the prisoner's counsel, that the prisoner, a day or two after the passing of such note to

The People *v*. Dibble.

Newman, on his way from his residence to Catskill, stopped at Stevens' tavern, and there bought a ring from a peddler, and gave him a five dollar bill to pay for it. A bystander said the bill was not good, but the peddler said it was good, and took it and gave the change to the prisoner — the price of the ring being two or three dollars. That further on his journey, at Steele's tavern, the prisoner purchased a ring from another peddler for two dollars, and gave the peddler a five dollar bill in payment for it, and received small bills and change for the balance, after deducting the price of the ring. That the last mentioned peddler afterward saw the prisoner at another place, and told him the bill he let him have was bad, and that a postmaster had told him so. That the prisoner thereupon took it back, said "he took it for good money" and returned the ring and bills and change to the peddler, and received from him the five dollar bill.

The witness could not tell the name of the bank by which the bills passed by the prisoner to the peddlers purported to have been issued. The bills were not produced, nor was any evidence given, except as above mentioned, to show that they were counterfeit.

The prisoner's counsel then moved the court to strike out all the evidence relating to these two bills passed to the peddlers, as irrelevant and incompetent, for the reason that it was not proved by what bank they purported to have been issued, or that they were counterfeit, and upon the ground that the bills were not produced. The court denied the motion, and the prisoner's counsel excepted.

It was also proved that two days before the bill in question was passed, the prisoner said he had no money.

*L. L. Bundy* (District Attorney), for the plaintiffs in error.

The court decided correctly in refusing to strike out the testimony of Smith Kenyon.

This evidence was admissible upon the theory that the bills passed by the prisoner to the peddlers were counterfeit. Proof of the forged notes is admissible. (*Roscoe Cr. Ev.*, 91, 92;

*Hodron's Case,* 1; *Lewis,* 65, 103; *Richard's Case, Id.*) These bills were returned to the prisoner as bad, and taken back by him ·as such. But two days before the prisoner said he had no money. He cited, also, *Safford* v. *The People,* 1 *Park. Cr. R.,* 478; *People* v. *Finnegan, Id.,* 147.

*L. J. Burditt,* for defendants in error.

The court erred in not striking out the 'testimony of Smith Kenyon. The bills passed to the peddlers were not produced; no means were used to have them produced, and no evidence given to excuse their non-production. No legal evidence was given that they were counterfeit or forgeries. The presumption is, nothing appearing to the contrary, that they were genuine bills.' (3 *Arch.,* 552; *Whar. Cr. L.,* 233, 241; 3 *Greenl. Ev.,* 905, 9111; *Cow & Hill's Notes,* 462; 3 *Arch. Cr. Pl.,* 552, *Note*; *The People* v. *Thomas,* 3 *Park. Cr. R.,* 256.)

*By the Court,* COMSTOCK, J. The conduct of the prisoner in passing the two bills to the peddlers in exchange for rings, was no doubt suspicious. But those transactions do not appear to have any connexion with the alleged offense, for which he was indicted. The two bills were passed to the peddlers some two or three days after the transaction, for which he was upon trial. ·It was not shown that the bills were of the same bank as the one in question, nor even that they were counterfeit. One of them was returned to him as bad, whether as uncurrent or as counterfeit, does not appear. He received it back, alleging that he took it for a good bill. This circumstance does not prove that it was a counterfeit, much less, that the prisoner knew that such was the fact. We think, therefore, that these transactions were merely calculated to excite suspicion and prejudice against the prisoner, and had no legal bearing upon the issue which was on trial. It is true the prisoner, some three or four days before the dealing with the peddlers, said he had no money. This circumstance only suggests a doubt ·whether he came honestly by the bills which he is proved to have had so soon afterward, but it does not

connect those bills or the uttering of them with the particular offense for which he was tried. We think the Supreme Court were right in granting a new trial.

Order affirmed.

COURT OF APPEALS. Albany, December, 1860. *Comstock, Selden, Denio, Davies, Clerke, Wright, Bacon* and *Welles,* Judges.